IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DONNA DIAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:16CV70 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Donna Dial ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for benefits under Title II on May 23, 2011, alleging a disability onset date of April 3, 2008. (Tr. at 137, 262-68.)[1] Her claim was denied initially (Tr. at 102-18, 159-62), and that determination was upheld on reconsideration (Tr. at 119-32, 165-67). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 170.) Following the subsequent hearing on July 2,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

2012, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 149.) However, on November 7, 2013, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for a new hearing, specifically directing the ALJ to further consider and address the opinion of Plaintiff's treating cardiologist. (See Tr. at 155-57.) Following Plaintiff's second hearing, the ALJ again determined that Plaintiff was not disabled. (Tr. at 24-25.) On December 11, 2015, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between April 3, 2008, her alleged onset date, and March 31, 2011, her date last insured. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: coronary artery disease, history of bypass surgery, left hip osteoarthritis, lumbar degenerative disc disease, obesity, and depression. (Tr. at 12.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 13-15.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work as defined

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

in 20 C.F.R. § 404.1567(b) with additional restrictions including a sit/stand option, only occasional climbing, and no concentrated exposure to vibrations, fumes, or hazards. The ALJ further limited Plaintiff to "simple, routine, repetitive tasks in a stable work environment at a nonproduction pace." (Tr. at 15.)

Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 23.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 23-24.)

Plaintiff now challenges the ALJ's decision on two fronts. First, she alleges that, even after the second hearing, the ALJ still failed to address the opinion of her cardiologist limiting Plaintiff to less than two hours of standing/walking in a work day. (Pl.'s Br. [Doc. #9] at 1.) Second, Plaintiff contends that "the ALJ erred by failing to evaluate whether Plaintiff's coronary artery disease ('CAD') met or medically equaled Listing 4.04C" at step three of the sequential evaluation process. (Id.) As further set out below, the Court agrees that the ALJ's listing analysis in this case is insufficient in light of the Fourth Circuit's decision in Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013). The Court will therefore recommend remand, and because any other issues raised by Plaintiff can be further addressed on remand, the Court does not reach the additional error alleged by Plaintiff.

As discussed above, at step three of the sequential analysis the ALJ considers whether any impairment meets or equals one or more of the impairments listed in the regulations at 20 CFR Part 404, Subpart P, Appendix 1. In analyzing the evidence at step three, an ALJ is not

6

required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept. 8, 2015). "Where such evidence exists but is rejected without discussion, 'insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" Id. (quoting Radford, 734 F.3d at 295); see also Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016).

In the present case, at step three, the ALJ concluded that:

> Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(Tr. at 13-14.) In the discussion supporting this conclusion, however, the ALJ specifically considered only listing 12.04 with respect to Plaintiff's mental impairment. The whole of the ALJ's analysis of the other listings was that:

> The claimant's physical impairments do not manifest the signs, symptoms, and findings required to meet or equal any of the Listings in 20 CFR 404, Part 404, Appendix 1 to Subpart P.

(Tr. at 14.) Thus, the ALJ identified no specific listings related to Plaintiff's physical impairments. (Tr. at 14.)

In comparison, in Radford, the Court of Appeals for the Fourth Circuit considered an administrative decision in which the ALJ summarily found that a relevant listing, in that case Listing 1.04A, had not been met. The Fourth Circuit noted that:

> the ALJ's decision regarding the applicability of Listing 1.04A is devoid of reasoning. He summarily concluded that Radford's impairment did not meet or equal a listed impairment, but he provided no explanation other than writing that he "considered, in particular," a variety of listings, including Listing 1.04A, and noting that state medical examiners had also concluded "that no listing [was] met or equaled." (A.R.16–17). This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.

Radford, 734 F.3d at 295. In the present case, the ALJ included even less analysis than the insufficient analysis in Radford, failing to even identify any physical listings considered at step three, let alone include any reasoning.

Moreover, Plaintiff has identified specific evidence supporting the potential applicability of Listing 4.04. Indeed, during the first hearing before the ALJ, Plaintiff's counsel specifically raised the possibility that the Listing for coronary artery disease might apply. (Tr. at 77.) The Listings under 4.00 apply to cardiovascular impairments, defined as "any disorder that affects the proper functioning of the heart or the circulatory system" resulting from the consequences of heart disease, including "[d]iscomfort or pain due to myocardial ischemia, with or without necrosis of heart muscle." Listing 4.00(A)(1). According to the Listing, "ischemic heart disease . . . results when one or more of your coronary arteries is narrowed or obstructed or, in rare situations, constricted due to vasospasm, interfering with the normal flow of blood to your heart muscle (ischemia)" and "[d]iscomfort of myocardial ischemic origin (angina pectoris) is discomfort that is precipitated by effort or emotion and promptly relieved by rest, sublingual nitroglycerin (that is, nitroglycerin tablets that are placed under the tongue), or other rapidly acting nitrates." Listing 4.00(E)(1), (3). Listing 4.04 specifically applies to ischemic heart disease, with symptoms due to myocardial ischemia, with either exercise tolerance testing meeting certain criteria under Listing 4.04A, three separate ischemic

8

episodes within a 12-month period under Listing 4.04B, or coronary artery disease demonstrated by angiographic evidence under Listing 4.04C.

In his decision, the ALJ identified Plaintiff's coronary artery disease, with a history of bypass surgery, as a severe impairment at step two of the sequential analysis. (Tr. at 12.) In particular, the ALJ noted that Plaintiff has experienced "periods of shortness of breath, fatigue[,] and chest pain since 2004 with short-term hospitalizations and stent placements in 2008 and 2010." (Tr. at 12-13.) The ALJ also acknowledged that Plaintiff had class III angina pectoris under the New York Heart Association ("NYHA") Functional Classification system during the entire period at issue in this case, from April 3, 2008 to March 31, 2011, indicating that Plaintiff suffered marked limitations due to heart disease throughout that time.[4] (Id.) Later in his decision, the ALJ devoted more than three pages to recounting medical evidence relating to Plaintiff's heart condition, including past abnormal stress studies "suggestive of LAD ischemia" (Tr. at 16-17) and extensive angiographic evidence, including multiple occluded and narrowed arteries resulting in bypass surgery and placement of stents on several occasions.[5] (Tr. at 16-19.) In addition, Plaintiff notes that the medical record reflects a 95%

---

[4] NYHA classification, the most commonly used classification system for heart failure, "places patients in one of four categories based on how much they are limited during physical activity. . . . Class III heart failure encompasses '[p]atients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain.'" Foster v. Colvin, No. CIV.A. 6:13-926-TMC, 2014 WL 3829016, at *3 n.2 (D.S.C. Aug. 4, 2014).

[5] Listing 4.04C requires evidence of coronary artery disease demonstrated by angiographic evidence showing one of the following:
    a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
    b. 70 percent or more narrowing of another nonbypassed coronary artery; or
    c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
    d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
    e. 70 percent or more narrowing of a bypass graft vessel; and

narrowing of Plaintiff's distal right coronary artery that could not be corrected, and also reflects that Plaintiff continued to suffer from chest pressure with exertion and shortness of breath and continued to require nitroglycerin to control her cardiac symptoms (Tr. at 602, 605, 646, 771, 772, 775). Nevertheless, the ALJ failed to consider any listings relating to Plaintiff's heart disease or explain this omission.

Defendant argues that the ALJ was not required to address Listing 4.04 because the record does not present an unresolved conflict of evidence as to whether Plaintiff met that listing. (Def.'s Br. [Doc. #11] at 10.) However, Defendant does not address any of the specific evidence in this case or respond to the particular contentions raised by Plaintiff with respect to the evidence. Defendant points generally to the ALJ's decision, but the ALJ's decision does not mention or address Listing 4.04 or the underlying requirements for that Listing at all. Defendant also points to the ALJ's reliance on the state agency physicians. However, while the state agency physicians did identify potential physical listings, including Listing 4.04, the state agency physicians did not include any analysis of the physical listings or any basis for why

---

"resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Part 404 Subpart P, App. 1, § 4.04C. Notably, in the instant case, a 95% narrowing was noted in Plaintiff's previously-stented distal right coronary artery ("RCA") as of September 2010, and Plaintiff's cardiologist, Dr. Kroll, was unable to open the artery to any degree using percutaneous transluminal coronary angioplasty ("PTCA"). (Tr. at 646, 771.) In describing Plaintiff's 2010 repeat catheterization, the ALJ omitted any mention of the unsuccessful portion of the procedure, which Plaintiff contends meets 20 C.F.R. Part 404 Subpart P, App. 1, § 4.04C(1)(b). Thus, the ALJ's analysis does not provide a basis for concluding that Listing 4.04C's angiographic requirement has not been met. Plaintiff also notes that the NYHA Class III angina pectoris recognized by the ALJ provides evidence of "very serious limitations" in Plaintiff's activities of daily living, and there is no basis to conclude that the ALJ relied on Plaintiff's activities of daily living to conclude that Listing 4.04C had not been met. The Court notes that Listing 4.04C also requires that "in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual." Because this provision has not been addressed by the Parties or the ALJ, the Court will not address it in the first instance, and leaves these provisions for analysis and fact-finding by the ALJ, with medical consultation as appropriate.

10

the listings were not met. (Tr. at 110, 128.) Indeed, it appears that on reconsideration, the state agency physician did not specifically conclude that the listings were not met, but found that there was "insufficient evidence to evaluate the claim." (Tr. at 128.)[6] Thus, the Court is left with Plaintiff's specific contentions regarding the applicability of Listing 4.04, but no analysis of the Listing by the state agency physicians, the ALJ, or the Defendant.

Defendant nevertheless contends that even if the ALJ "should have offered a more detailed discussion in support of his rationale for his step-three findings, remand is not appropriate because the record so clearly supports the ALJ's finding." (Def. Br. at 7.) However, Defendant does not further specify how the record "clearly supports" the ALJ's determination that no listings were met. As noted above, Defendant does not address the specific requirements of Listing 4.04, nor does Defendant address Plaintiff's particular contentions as to Listing 4.04. Defendant also does not point to any portion of the ALJ's decision or even the state agency physicians' analysis that would allow the Court to determine how the record supports the conclusion that Listing 4.04 was not met. Without any analysis for this Court to review, remand is required.

In reaching this conclusion, the Court is particularly guided by a recent decision of the Fourth Circuit considering a similar case involving an ALJ's failure to address Listing 4.04C. Brown v. Colvin, 639 F. App'x at 921. In that case, the district court noted the ALJ's failure to specifically analyze Listing 4.04, but nevertheless considered the evidence in the record and the ALJ's decision and concluded that the ALJ's "detailed review of Plaintiff's medical history

---

[6] Moreover, "[t]he ALJ is required to balance conflicting evidence and make a determination of disability, not the consultants." Garner v. Colvin, 1:12CV1280-WO-JLW, 2015 WL 710781, at *8 (M.D.N.C. Feb. 18, 2015) (adopted Mar. 16, 2015).

11

constitutes substantial evidence supporting Plaintiff's failure to satisfy" the elements of Listing 4.04C. Brown v. Colvin, No. 1:13CV96, 2014 WL 4666978, at *10 (W.D.N.C. Sept. 18, 2014.) However, the Fourth Circuit reversed the district court and held that:

> In explaining his decision at Step Three—that Brown's heart condition does not meet or equal the level of severity of Listing 4.04C—the ALJ stated only that:
>
>> The medical evidence of record does not establish the presence of objective findings that would meet or equal any impairment listed in the Listing of Impairments as found in Appendix 1, Subpart P of Regulations No. 4. This is consistent [with] the State Agency opinion considering Listing[ ] 4.04 (Ischemic Heart Disease).
>
> We found a substantially similar explanation deficient in *Radford* because it was "devoid of reasoning" and rendered impossible the task of determining whether the ALJ's finding was supported by substantial evidence. 734 F.3d at 295.
>
> The Commissioner contends that, despite the similarity in the cursory explanations provided by the ALJ here and the ALJ in *Radford*, we should not remand for further proceedings because, unlike the medical record in *Radford*, the medical record here clearly establishes that Brown's heart condition does not meet or equal the criteria of Listing 4.04C. We conclude that Brown's medical record is not so one-sided that one could clearly decide, without analysis, that Listing 4.04C is not implicated. **Further, we do not accept Brown's and the Commissioner's invitations to review the medical record *de novo* to discover facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so.** Instead, we remand to avoid engaging in fact-finding "in the first instance" and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review in the event the case returns to us. *Radford*, 734 F.3d at 296.

Brown v. Colvin, 639 F. App'x at 923 (emphasis added). While Brown is unpublished, it is certainly persuasive, and provides clear caution to this Court with respect to any attempt to review the medical record to find facts to support or refute the ALJ's finding. It is the role of the ALJ, with assistance from medical experts as needed and appropriate, to review the medical record and discover those facts. While it may be that Plaintiff fails to meet Listing

12

4.04, there is no basis for this Court to determine how that analysis was made or the basis for the conclusion that the Listing was not met. In addition, in light of the evidence discussed by the ALJ and the additional matters raised by Plaintiff, the Court concludes as in Brown that the medical evidence related to Plaintiff's heart condition "is not so one-sided that one could clearly decide, without analysis, that Listing 4.04C is not implicated." The ALJ's failure to address any of the physical listings in this case, including particularly Listing 4.04, is thus more than a "technical error," and is instead a situation where "the ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a 'meaningful review.'" Radford, 734 F.3d at 296. Therefore, as in Radford and Brown, the appropriate course is to remand the case to the ALJ for further proceedings.

In view of this recommendation, the Court need not address additional issues raised by Plaintiff at this time. See Brown, 639 F. App'x at 923 ("Brown also argues on appeal that the district court erred in concluding that the ALJ properly accorded less than controlling weight to the opinion of one of Brown's treating cardiologists. However, in view of our decision to vacate the decision and remand on Step Three of the sequential analysis, we decline to address this issue.").[7]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

---

[7] The Court notes that Plaintiff contends that the ALJ's decision fails to address the treating cardiologist's opinion limiting her to less than 2 hours of standing/walking per day. Plaintiff contends that other portions of the opinion were addressed, but the portion relating to standing/walking was not. To the extent the ALJ chose not to credit that limitation, it is not clear on what basis that determination was made. Plaintiff also notes that in making his credibility determination, the ALJ relied on the fact that Plaintiff had a "successful" stent to the proximal RCA in 2010, without including the fact that the 2010 procedure also included an unsuccessful attempt to stent the distal RCA. These matters can be considered on remand, so the Court need not address them further here.

13

under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #10] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 30th day of November, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge